1  WO

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9  Sheeah Savage,                              No. CV-11-02103-PHX-JAT

10                      Plaintiff,              **ORDER**

11  v.

12
    Michael J. Astrue, Commissioner of the
13  Social Security Administration,

14                      Defendant.

15

16         Pending before the Court is Plaintiff's appeal from the Administrative Law

17  Judge's ("ALJ") denial of Plaintiff's Title II application for disability insurance benefits

18  and Title XVI application for supplemental security income based on disability.

19  **I.      PROCEDURAL BACKGROUND**

20         Plaintiff Sheeah Savage filed Title II and Title XVI applications for Disability

21  Insurance Benefits and Supplemental Security Income benefits on July 28, 2006, alleging

22  that her disability began on April 1, 2006.  (Record Transcript ("TR") 182-190).  Plaintiff

23  was 34 years old on April 1, 2006 and listed her illnesses, injuries, and conditions on her

24  application as depression and lower abdominal pain.   (TR 222; 218).   Plaintiff's

25  applications were denied initially and, on reconsideration, a hearing was held on

26  November 25, 2008 before an ALJ, who issued an unfavorable decision on June 10,

27  2009. (TR 29-52; TR 80-93).  On December 7, 2009, the Appeals Council vacated the

28  hearing decision and remanded the case to the ALJ for further proceedings.  (TR 94-97).

1    Thereafter, on January 18, 2011, another hearing was held before the ALJ, who issued an
2    unfavorable decision on March 9, 2011 (TR 53-75; TR 9-23).  On August 30, 2011, the
3    Appeals Council denied Plaintiff's request for review of the ALJ's second decision.

4         On October 26, 2011, Plaintiff filed her Complaint for Judicial Review of the
5    Administrative Determination of Claim, which is the subject of this appeal (Doc. 1).
6    Plaintiff argues that the Court should vacate the Administrative Law Decision because:
7    (1) the ALJ erred in failing to comply with the order of the Social Security
8    Administration Appeals Council on remand; (2) the ALJ erred by relying on the opinion
9    of a non-examining state agency reviewer who completed an assessment form as part of
10   the initial determination; (3) the ALJ erred by determining Plaintiff's residual functional
11   capacity without any basis in the record and by failing to make an RFC determination
12   based on the individualized facts of her case; and (4) the ALJ erred by rejecting
13   Plaintiff's symptom testimony in the absence of clear and convincing reasons for so
14   doing.  (Doc. 16).

15        **II.    LEGAL STANDARD**
16        The Commissioner's decision to deny benefits will be overturned "only if it is not
17   supported by substantial evidence or is based on legal error." *Magallanes v. Bowen*, 881
18   F.2d 747, 750 (9th Cir. 1989) (internal quotation omitted).  Substantial evidence is more
19   than a mere scintilla, but less than a preponderance. *Reddick v. Charter*, 157 F.3d 715,
20   720 (9th Cir. 1998).  It is such relevant evidence as a reasonable mind might accept as
21   adequate to support a conclusion.  *Id.*

22        In determining whether there is substantial evidence to support a decision, this
23   Court considers the record as a whole, weighing both the evidence that supports the
24   administrative law judge's conclusions and the evidence that detracts from the
25   administrative law judge's conclusions.  *Id.*  If there is sufficient evidence to support the
26   Commissioner's determination, the Court cannot substitute its own determination.  *Id.*
27   Additionally, the administrative law judge is responsible for resolving conflicts in

28

medical testimony, determining credibility, and resolving ambiguities.  *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  Thus, if on the whole record before this Court, substantial evidence supports the Commissioner's decision, this Court must affirm it.  *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g).

### A.      Definition of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show, among other things, that he is "under a disability." 42 U.S.C. § 423(a)(1)(E). The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* at § 423(d)(1)(A).  A person is "under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at § 423(d)(2)(A).

### B.      Five-Step Evaluation Process

The Social Security regulations set forth a five-step sequential process for evaluating disability claims.  20 C.F.R. § 404.1520; *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir.1998) (describing the sequential process).  A finding of "not disabled" at any step in the sequential process will end the ALJ's inquiry.   20 C.F.R. § 404.1520(a)(4).  The claimant bears the burden of proof at the first four steps, but the burden shifts to the ALJ at the final step.  *Reddick,* 157 F.3d at 721.

The five steps are as follows:

1.      First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i).  If so, the claimant is not disabled.

2.      If the claimant is not gainfully employed, the ALJ next determines whether

the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* at § 404.1520(c). Basic work activities means the "abilities and aptitudes to do most jobs." *Id.* at § 404.1521(b). Further, the impairment must either be expected "to result in death" or "to last for a continuous period of twelve months." *Id.* at § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)). The "step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir. 1996).

3. Having found a severe impairment, the ALJ next determines whether the impairment "meets or equals" one of the impairments specifically listed in the regulations. *Id.* at § 404.1520(a) (4)(iii). If so, the claimant is found disabled without considering the claimant's age, education, and work experience. *Id.* at § 404.1520(d).

4. At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work." *Id.* at § 404.1520(a)(4)(iv). To make this determination, the ALJ compares its "residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* at § 404.1520(f). If the claimant can still perform the kind of work the claimant previously did, the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

5. At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. *Id.* at § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's residual functional capacity, together with vocational factors (age, education, and work experience). *Id.* at § 404.1520(g)(1). If the claimant can make an adjustment to other work, then he is not disabled. If the claimant cannot perform other work, he will be found disabled. As previously noted, the ALJ has the burden of proving the claimant can perform other substantial gainful work that exists in the national economy. *Reddick,* 157 F.3d at 721.

- 4 -

With regard to steps 1–5, in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since April 1, 2006, (2) had the following severe impairments when considered in combination: a bipolar disorder, a borderline personality disorder, an anxiety disorder (by testimony), a history of alcohol abuse (in remission), and abdominal/pelvic pain from uterine fibroids, (3) did not have an impairment or combination of impairments specifically listed in the regulations, (4) had the ability to perform the exertional requirement of sedentary work with restrictions and, due to her mental impairments, was limited to simple, unskilled work. (TR 12-23).  As a result of this analysis, the ALJ found that Plaintiff "is capable of making a successful adjustment to work in jobs that exist in significant numbers in the national economy" and, thus, found that Plaintiff was not disabled as defined in the Social Security Act.

## III.   ANALYSIS

Plaintiff limits her objections to the ALJ's findings regarding her mental impairments and, as stated above, argues that the ALJ's opinion be vacated because (1) the ALJ erred in failing to comply with the order of the Social Security Administration Appeals Council on remand; (2) the ALJ erred by relying on the opinion of a non-examining state agency reviewer who completed an assessment form as part of the initial determination; (3) the ALJ erred by determining Plaintiff's residual functional capacity without any basis in the record and by failing to make an RFC determination based on the individualized facts of her case; and (4) the ALJ erred by rejecting Savage's symptom testimony in the absence of clear and convincing reasons for so doing.  (Doc. 16).  The Court will address each of Plaintiff's arguments in turn.

### A.   Whether the ALJ Erred in Failing to Comply with the Order of the Social Security Administration Appeals Council on Remand

Plaintiff first argues that the ALJ erred because he did not comply with the initial remand order of the Appeals Council.  Despite Plaintiff's arguments, the failure of the ALJ to follow the Appeals Council's remand Order is not a proper basis for this Court to

either reverse or remand the ALJ's final decision regarding Plaintiff's disability.  *See Strauss v. Commissioner of the Social Sec. Admin.*, 635 F.3d 1135, 1136 -1138 (9th Cir. 2011) (reversing District Court's remand for an award of benefits based on the ALJ's failure to follow the Appeals Council's remand Order because "[t]he ALJ's errors are relevant only as they affect that analysis on the merits.  A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be.") (internal citations omitted); *cf. Taylor v. Commissioner of Social Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011) (internal citation omitted) ("When the Appeals Council denies a request for review, it is a non-final agency action not subject to judicial review because the ALJ's decision becomes the final decision of the Commissioner.").

Accordingly, this Court will not engage in an advisory analysis of whether the ALJ did or did not follow the Appeals Council's remand order during the second hearing. Rather, this Court's review is based on whether the ALJ erred in determining that Plaintiff was not disabled within the meaning of the Social Security Act.  As such, the Court will only consider Plaintiff's arguments regarding the ALJ's failure to follow the Appeals Council's remand order to the extent they are relevant to the ALJ's ultimate decision regarding Plaintiff's disability.

### B.   Whether the ALJ Properly Determined Plaintiff's Residual Functional Capacity

Plaintiff argues that the ALJ erred by determining a mental residual functional capacity in terms of "simple, unskilled work."  Plaintiff argues that the ALJ erred by including a discussion of the residual functional capacity in the step three portion of his opinion, after he determined that Plaintiff's mental impairments did not meet or equal requirements of listed criteria for mental disorders.  Plaintiff further argues that the ALJ did not support a mental residual functional capacity determination with a function-by-function assessment as required by agency regulations and, thus, failed to properly assess

1  Plaintiff's mental residual functional capacity.

2      In addition to the five-step sequential evaluation discussed above, when evaluating

3  the severity of mental impairments for adults, the ALJ is required to assess the functional

4  limitations of the claimant in relation to four broad categories: daily living, social

5  functioning, concentration, persistence, or pace, and episodes of decompensation.   20

6  CFR § 404.1520a.   When rating the categories of daily living, social functions, and

7  concentration, persistence, or pace, the ALJ is to use a five point scale of none, mild,

8  moderate, marked, and extreme.  *Id.*  When rating decompensation, the ALJ is to use a

9  four point scale of none, one or two, three, or four or more.  *Id.*  After rating the degree of

10  functional limitation, the ALJ determines the severity of the mental impairments.  If the

11  ALJ finds that there are severe mental impairments that do not meet or are equivalent in

12  severity to any listing, the ALJ then assesses the claimant's residual functional capacity.

13  *Id.*

14      Social Security Rule 96–8p provides:

15          The RFC assessment must first identify the individual's
16          functional limitations or restrictions and assess his or her
            work-related abilities on a function-by-function basis,
17          including the functions in paragraphs (b), (c), and (d) of 20
            CFR 404.1545 and 416.945. Only after that may RFC be
18          expressed in terms of the exertional levels of work, sedentary,
19          light, medium, heavy, and very heavy.

20      In assessing a residual functional capacity ("RFC") for mental abilities, the ALJ

21  must assess the nature and extent of claimant's mental limitation and restrictions and then

22  determine the residual functional capacity for work activity on a regular and continuing

23  basis.  20 C.F.R. 404.1545(c); 20 C.F.R. 416.945.  "A limited ability to carry out certain

24  mental activities, such as limitations in understanding, remembering, and carrying out

25  instructions, and in responding appropriately to supervision, co-workers, and work

26  pressures in a work setting, may reduce [a claimant's] ability to do past work and other

27  work." *Id.*

28

In this case, the ALJ found that Plaintiff has (1) mild restrictions in daily living; (2) mild difficulties in social functioning; (3) moderate difficulties regarding concentration persistence or pace, and (4) no episodes of decompensation. (TR 17). The ALJ then went on to explain the basis for these conclusions with specific reference to Plaintiff's medical records from 2006 to 2008, noting that the medical records reflected that claimant was able to take care of her own personal needs, was able to work part-time as an exotic dancer and house cleaner, had only mild limitations with her social functioning as reflected in notes indicating the she had a cooperative attitude, was social, and could cooperate with others, and her social interaction appeared normal. (TR 18).

The ALJ further explained that Plaintiff had moderate difficulties regarding concentration, persistence and pace, as treatment notes indicated (1) occasional problems in the ability to concentrate, but her memory was good and she could pay attention, (2) she had no real difficulties in the cognitive area and her attention span was good, although she had some anger issues, (3) she was working on emotional stability and making progress, (4) although she had a history of alcohol problems, there was no hospitalization for alcohol abuse since the alleged onset date of disability; (5) although she had an overdose of medication, there was no additional evidence of suicidal ideation; (6) there was no evidence of a thought disorder; and (7) during the hearing, her associations were logical and she did not demonstrate any difficulty with attending the proceedings or answering questions. (*Id.*).

With regard to decompensation, the ALJ found that there was no evidence of any significant episodes of decompensation in a work or work-like setting. (*Id.*). The ALJ further found that the medical records reflected that Plaintiff's mental health had improved considerably with appropriate treatment since mid-2008. (*Id.*).

### 1. Whether the RFC Assessment was based on the Individualized Facts of Plaintiff's Case

Plaintiff argues that the ALJ failed to carry out a function-by-function assessment

based on all of the evidence regarding her ability to do certain activities. Plaintiff does not point to evidence of her inability to carry out the activities that the ALJ overlooked or ignored, but rather argues that the ALJ did not do a function-by-function analysis based upon all of the evidence of her ability to do work-related activities. Plaintiff points to the portion of 20 C.F.R. section 404.1545(c), which states that "A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce [a claimant's] ability to do past work and other work" in support of her argument that the ALJ did not properly assess her ability to engage in activities on a function-by-function basis.

However, the ALJ did analyze Plaintiff's ability to carry out mental activities, including analyzing her ability to understand, remember, and carry out instructions as detailed in her medical records and, based on his own observations, during the hearing. (TR 17-18). The ALJ further noted Plaintiff's ability to maintain part-time work as an exotic dancer (from July 2005 to February 2008) and then a house cleaner, and to care for her personal needs, cook, drive, and shop. (TR 20). The ALJ further noted the significant improvement in Plaintiff's condition in her medical records. (TR 20-21). In determining that Plaintiff could perform jobs that exist in significant numbers in the national economy, the ALJ considered that Plaintiff was 34 years old on the date of the alleged onset of disability, that she had a high school education, and could communicate in English. (TR 22). In addition, the ALJ considered the opinion of the Vocational Expert that Plaintiff could perform jobs such as document preparer, a charge account clerk, and a receptionist. (TR 22-23).

As such, the ALJ's analysis of Plaintiff's personal limitations are sufficiently detailed to support his RFC determination and Plaintiff's assertions that the ALJ erred by determining Plaintiff's residual functional capacity without any basis in the record and by failing to make a RFC determination based on the individualized facts of her case is

without merit.

## 2.    Whether the ALJ Erred in Relying on a State Agency Examiner in Making the RFC Determination

Plaintiff next argues that the ALJ improperly relied on medical opinions of the state agency's medical consultants in forming his RFC determination because (1) one of the forms relied on was completed by a state agency reviewer who never examined Plaintiff and that reviewer did not state that Plaintiff was limited to unskilled work, and (2) that state agency reviewer solely looked at the record, which was four years before the ALJ's decision, and the reviewer did not state how any evidence supported the provided ratings.  Plaintiff argues that the ALJ solely relied on the opinion of a non-testifying, non-examining state agency physician and, thus, his conclusion that, due to her mental impairments, Plaintiff is limited to simple, unskilled work is not supported by substantial evidence.

Plaintiff argues that the ALJ's determination of Plaintiff's RFC was solely supported by a form provided by a State Agency Reviewer.  Plaintiff supports this assertion with reference to part of the ALJ's opinion where he states that "one of the psychological consultants found that claimant's episodes of alcohol abuse had some impact on her mental functioning, especially in the area of concentration [sic] persistence, or pace (exhibit 14F/28-41).  However, even with alcohol abuse, the claimant's mental impairments were not severe enough to be disabling.  This medical opinion is supported by the great weight of the evidence of record."  (TR 21).  Plaintiff argues that because this opinion was the opinion of a non-examining physician who reviewed Plaintiff's medical records, the ALJ's RFC determination is based on error.

Although Plaintiff argues that this opinion is not supported by substantial evidence in the Record, Plaintiff fails to provide one cite to the Record that contradicts this opinion.  Further, as detailed in the foregoing section of this Order, the ALJ did not solely rely on the opinion of a non-examining physician in determining Plaintiff's RFC.

As such, Plaintiff has failed to show that the ALJ erred in including the opinion of

- 10 -

a non-examining physician in the overall analysis of Plaintiff's RFC.

### C.    Whether the ALJ Erred by Rejecting Plaintiff's Symptom Testimony in the Absence of Clear and Convincing Reasons

Plaintiff argues that the ALJ failed to provide clear and convincing reasons, supported by substantial evidence in the Record for rejecting Plaintiff's subjective symptom testimony.  Plaintiff specifically objects to the ALJ's statement that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were inconsistent with the residual functional capacity assessment.  Plaintiff further argues that the ALJ did not explain how the medical evidence detracted from the veracity of Plaintiff's reported symptoms.  Plaintiff argues that the ALJ's reliance on GAF scores was also insufficient to discount the severity of Plaintiff's symptoms.  Plaintiff finally argues that the ALJ erred in relying on Plaintiff's ability to perform various activities in rejecting her symptom testimony.

Plaintiff argues that the ALJ rejected her subjective symptom testimony and identifies the following testimony that the ALJ improperly rejected: Plaintiff testified that she suffers from depression "really bad," tends to sleep a lot and does not have much energy to do things, that there is "actually half a month that I feel that way where I don't want to go anywhere or do anything," and that "in a typical week, it would be more than two days" that she would feel "so bad," she would stay in bed.  (Doc. 16 at 7-10).

Once a claimant produces medical evidence of an underlying impairment which is reasonably likely to be the cause of some pain, the ALJ 'may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.'"  *Orteza v. Shalala,* 50 F.3d 748, 749–750 (9th Cir. 1995) (quoting *Bunnell v. Sullivan,* 947 F.2d 341, 346–47 (9th Cir. 1991) (en banc).[1]  In this case, there is no question that the ALJ found that there

---

[1]    The Parties dispute whether the ALJ must give clear and convincing reasons for rejecting claimant's subjective complaints or must make specific findings based on the

1

record for discounting claimant's subjective complaints.  The District Court of California
has addressed this issue in a well-reasoned opinion and this Court adopts that Court's
reasoning in concluding that, to the extent there is actually any principled distinction
between the two standards, the ALJ must make specific findings supported by the record
to explain his credibility evaluation.  The District Court of California set forth its
reasoning as follows:

> In *Bunnell,* the court addressed confusion regarding
> the standard for evaluating the credibility of subjective
> complaints and endorsed the standard set forth in *Cotton v.
> Bowen,* 799 F.2d 1403 (9th Cir.1986), *Varney v. Secretary of
> Health and Human Services,* 846 F.2d 581, 583–584 (9th
> Cir.1988) and *Gamer v. Secretary of Health and Human
> Services,* 815 F.2d 1275, 1279 (9th Cir.1987). *Bunnell,* 949
> F.2d at 345. The so-called "*Cotton* standard" requires the
> claimant to produce objective medical evidence of an
> underlying impairment that is reasonably likely to be the
> cause of the alleged pain. Once that evidence is produced, the
> adjudicator may not reject a claimant's subjective complaints
> based solely on a lack of objective medical evidence fully
> corroborating the alleged severity of the pain. *Bunnell,* 949
> F.2d at 343, 345 (citing *Cotton,* 799 F.2d at 1407). Rather, the
> adjudicator must "specifically make findings which support
> this conclusion. These findings, properly supported by the
> record, must be sufficiently specific to allow a reviewing
> court to conclude the adjudicator rejected the testimony on
> permissible grounds and did not arbitrarily discredit a
> claimant's testimony regarding pain." *Bunnell,* 949 F.2d at
> 345–46 (internal citation and quotation omitted).
>
> Some subsequent decisions have stated that, unless
> there is affirmative evidence that a claimant is malingering,
> the ALJ must articulate "clear and convincing" reasons for
> rejecting subjective complaints. *See, e.g., Morgan v.
> Commissioner of the Social Security Administration,* 169 F.3d
> 595, 599 (9th Cir.1999); *Regennitter v. Commissioner of the
> Social Security Administration,* 166 F.3d 1294, 1296 (9th
> Cir.1999); *Reddick,* 157 F.3d at 722; *Light,* 119 F.3d at 792;
> *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir.1995); *Smolen,* 80
> F.3d at 1284; *Johnson v. Shalala,* 60 F.3d 1428, 1433 (9th
> Cir.1995); *Dodrill v. Shalala,* 12 F.3d 915, 918 (9th

- 12 -

Cir.1993). Other decisions state that the ALJ must make specific findings based on the record, but do not use the "clear and convincing" formula. *See, e.g., Meanel v. Apfel,* 172 F.3d 1111, 1113–14 (9th Cir.1999); *Sousa v. Callahan,* 143 F.3d 1240, 1244 (9th Cir.1998); *Chavez v. Department of Health and Human Services,* 103 F.3d 849, 853 (9th Cir.1996); *Byrnes v. Shalala,* 60 F.3d 639, 641–42 (9th Cir.1995); *Moncada,* 60 F.3d at 524; *Orteza v. Shalala,* 50 F.3d 748, 749–50 (9th Cir.1995) (per curiam); *Flaten v. Secretary of Health and Human Services,* 44 F.3d 1453, 1464 (9th Cir.1995).

The "clear and convincing" language appears to have been derived from *Swenson v. Sullivan,* 876 F.2d 683 (9th Cir.1989), which states that "[t]he Secretary's reasons for rejecting excess symptom testimony must be clear and convincing if medical evidence establishes an objective basis for some degree of the symptom and no evidence affirmatively suggests that the claimant was malingering." *Swenson,* 876 F.2d at 687 (citing *Gallant v. Heckler,* 753 F.2d 1450, 1455 (9th Cir.1984)). In *Gallant,* however, the court did not hold, or even affirmatively state, that an ALJ is required to provide "clear and convincing" reasons for rejecting excess pain testimony whenever there is no evidence of malingering. Instead, the court merely observed that no witness had testified that the claimant was malingering, that "[n]o clear and convincing reasons were provided by the ALJ" for his rejection of the claimant's testimony, and that the evidence relied on by the ALJ for his credibility evaluation was "insubstantial." *Gallant,* 753 F .2d at 1455, 1456.

*Bunnell* did not cite either *Gallant* or *Swenson,* and neither *Bunnell* nor the cases it did cite with approval (that is, *Cotton, Varney,* and *Gamer* ) use the "clear and convincing" formula. It thus appears that the "clear and convincing" standard is an unwarranted elaboration of the substantial evidence standard of review, and that it was not part of the *Cotton* test adopted in *Bunnell,* where the en banc court attempted to clarify the law. Any difference between the standards may be more apparent than real. There does not

- 13 -

1   was medical evidence of underlying impairments that would be reasonably likely to cause

2   pain. *See* TR 20 ("The claimant's medically determinable impairments could reasonably

3   expect to cause the alleged symptoms; however, the claimant's statements concerning the

4   intensity, persistence and limiting effects of these symptoms are not credible to the extent

5   they are inconsistent with the above residual functional capacity requirement.").

6       The question then is whether the ALJ discredited Claimant's testimony of pain

7   solely because such pain was not supported by objective medical evidence. "Although an

8   ALJ 'cannot be required to believe every allegation of disabling pain,' the ALJ cannot

9   reject testimony of pain without making findings sufficiently specific to permit the

10  reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's

11  testimony." *Orteza,* 50 F.3d at 750 (quoting *Bunnell,* 947 F.2d at 345–46; *Fair v. Bowen,*

12  885 F.2d 597, 603 (9th Cir.1989)).  Factors that the adjudicator should consider when

13  making such credibility determinations include the nature, location, onset, duration,

14  frequency, radiation, and intensity of any pain, precipitating and aggravating factors (e.g.,

15  movement, activity, environmental conditions), type, dosage, effectiveness, and adverse

16  side-effects of any pain medication, treatment, other than medication, for relief of pain,

17  functional restrictions, and the claimant's daily activities.  *Bunnell,* 947 F.2d at 346

18  (citing SSR 88–13, 1988 WL 236011 (July 20, 1988)).

19      "[I]f the claimant engages in numerous daily activities involving skills that could

21          appear to be any principled distinction between the two
22          standards as they have been applied. To the extent that there
            is or may be a conflict, however, *Bunnell* must control since it
23          was an en banc decision. Accordingly, this Court will adhere
            to *Bunnell*'s requirement that the ALJ make "specific
24          findings" supported by the record to explain his credibility
25          evaluation, rather than imposing the arguably more exacting
            "clear and convincing" requirement suggested by *Morgan* and
26          its predecessors.

27  *Ballard v. Apfel*, No. CV 99-2195-AJW, 2000 WL 1899797, at *2 (C.D. Cal. Dec. 19,
28  2000).

- 14 -

1    be transferred to the workplace, an adjudicator may discredit the claimant's allegations
2    upon making specific findings relating to the claimant's daily activities." *Id.* (citing
3    *Fair*, 885 F.2d at 603). "Another relevant factor may be 'unexplained, or inadequately
4    explained, failure to seek treatment or follow a prescribed course of treatment.'" *Id.*
5    (internal citation omitted). "An adjudicator may also use 'ordinary techniques of
6    credibility evaluation' to test a claimant's credibility." *Id.* (internal citation omitted).
7    "So long as the adjudicator makes specific findings that are supported by the record, the
8    adjudicator may discredit the claimant's allegations based on inconsistencies in the
9    testimony or on relevant character evidence." *Id.*

10       In this case, the ALJ made specific findings to support his determination that
11   Plaintiff's statements concerning the intensity, persistence, and limiting effects of her
12   conditions were not fully credible and did not prevent her from performing unskilled
13   work. While the ALJ did make specific findings that the objective medical evidence did
14   not support the extent of Plaintiff's complaints (TR 19–21), the ALJ also considered the
15   factors required by SSR 88–13 in making the credibility determination.

16       The ALJ took into account Plaintiff's daily activities of driving, shopping,
17   cooking, and working part time. The ALJ further noted that Plaintiff continued to
18   participate in vocational rehabilitation. Indeed, Plaintiff frequently expressed the desire
19   to return to school to become a veterinary technician or a dog groomer. Plaintiff argues
20   that it was improper for the ALJ to consider these activities as evidence that Plaintiff can
21   work. Plaintiff argues that the ALJ failed to consider that these activities would not
22   transfer to a work environment and that Plaintiff's part-time work does not support the
23   inference that she could work full time.

24       While the Court agrees that this evidence, taken alone, could not support
25   Claimant's ability to perform all jobs, the ALJ did not make such a conclusion. In
26   accordance with the factors to consider under SSR 88–13, the ALJ considered evidence
27   of daily activities. Such consideration is not improper. *See Fair,* 885 F.2d at 603

28

("More realistically, if, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working").  In this case, Plaintiff's entire argument is based on the ALJ discounting her testimony that that there are times when she stays in bed two days a week.  Plaintiff argues that, based on this testimony, she could not possibly work a full time job.

However, the ALJ relied on several factors when determining that Plaintiff could perform certain work, including significant evidence of improvement in her medical records, her daily activities, her ability to maintain part-time work on a long-term basis, and her continued interest in returning to school to become a veterinary technician. Further, the ALJ noted that Plaintiff's symptoms improved as she no longer drank heavily and no longer used street drugs.  At the hearing, Plaintiff testified that she still drank some beer.  In light of the improvement in her symptoms when she was not drinking, it was reasonable to find that the fact that Plaintiff continued to drink some alcohol undermined the severity of her reported symptoms.

Based on foregoing, the ALJ did not "discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant was not supported by objective medical evidence," but rather made "specific findings that are supported by the record."

## IV.   CONCLUSION

Accordingly, the ALJ did not err in finding that Plaintiff was not disabled within the meaning the Social Security Act.

Based on the foregoing,

**IT IS ORDERED** that the decision of the Administrative Law Judge is **AFFIRMED.**

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment

- 16 -

1   accordingly.  The judgment will serve as the mandate of this Court.

2       Dated this 13th day of February, 2013.

3

4

5

6                                       James A. Teilborg
                                        United States District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 17 -